# UNITED STATES DISTRICT COURT
## SOUTHERN DISTRICT OF FLORIDA

# 05-20849 CR-MARTINEZ

Case No. _____



18 U.S.C. § 371
18 U.S.C. § 1347
18 U.S.C. § 2

**UNITED STATES OF AMERICA**

**vs.**

**ONELIO S. BAEZ,**
**JUAN CARLOS MATEO,**
**JORGE ARNALDO VALIDO,**
**and**
**LUIS JACINTO MARTI,**

          **Defendants.**

_____/

FILED by _____ D.C.
MAG. SEC.

NOV 10 2005

CLARENCE MADDOX
CLERK U.S. DIST. CT.
S.D. OF FLA. • MIAMI

## INDICTMENT

The Grand Jury charges that:

## GENERAL ALLEGATIONS

At all times relevant to this Indictment:

### Medicaid Program

1.      Medicaid is a program that pays for medical assistance for certain individuals with limited income and resources.  Medicaid is jointly funded by the Federal and State governments. The Centers for Medicare and Medicaid Services ("CMS"), which prior to June 15, 2001, was known as the Health Care Financing Administration, is an agency of the United States Department

of Health and Human Services ("HHS").  CMS is responsible for overseeing the Medicaid program in participating states, including Florida.

2.      In Florida, Medicaid is administered by the Agency for Health Care Administration ("AHCA"), an agency of the State of Florida.  Affiliated Computer Systems ("ACS") contracted with AHCA to serve as the fiscal agent to process and pay Medicaid claims submitted by health care providers throughout Florida, including doctors and pharmacies.  The United States provided approximately half of the funding utilized by AHCA in order to operate Medicaid in Florida. Individual patients who received benefits under Medicaid are commonly referred to as Medicaid "recipients."

3.      Medicaid is a "health care benefit program," as defined by Title 18, United States Code, Section 24(b).

4.      In Florida, a doctor, pharmacy, or other provider of medical services seeking reimbursement from Medicaid for those services must enter into a contract with ACS and must agree to the laws, regulations, and rules set forth by AHCA and HHS.

5.      In Florida, health care providers, including doctors and pharmacies, that participated in Medicaid were eligible to obtain payment for services rendered to individual Medicaid patients by submitting claims for reimbursement to ACS.

### IVIG Drugs

6.      Medicaid pays for the cost of certain prescription drugs dispensed to Medicaid recipients if those medications were medically necessary, prescribed by a doctor, and if a Medicaid-approved pharmacy filled and dispensed the prescription.  In Florida, in order for prescription drugs to be approved for payment by Medicaid, ACS must receive a prescription, a completed and signed prior authorization form by the doctor, and a test result indicating the medical necessity of the drug. These documents may be submitted to ACS by the doctor or the dispensing pharmacy.

7.      AHCA included Intravenous Immune Globulin ("IVIG") drugs on the list of prescription drugs requiring prior authorization from ACS.  IVIG drugs are a class of pharmaceutical products administered intravenously, that is, by the insertion of a needle into a patient's vein.  IVIG drugs increase white blood cells and decrease the risk of infection in cancer and other patients with immune disorders.  Gammimune, Iveegam, and Venoglobulin are IVIG drugs.

### Defendants and Related Entities

8.      Defendant **ONELIO S. BAEZ**, a Miami-Dade County resident, organized the diversion for profit of expensive prescription medications, including IVIG drugs, outside ordinary channels of drug distribution.  Medicaid paid for the cost of these diverted medications.

9.      Defendant **JUAN CARLOS MATEO,** a Miami-Dade County resident, served as a patient recruiter for **ONELIO S. BAEZ**.  **MATEO's** primary responsibility was to induce Medicaid recipients, through payments of kickbacks and bribes, to visit physicians and medical clinics selected by **BAEZ**.  **MATEO** also transported Medicaid recipients to clinics and picked up medications dispensed for these patients by local pharmacies.

3

10.     Defendant **JORGE ARNALDO VALIDO**, a Miami-Dade County resident, had a restricted license to practice medicine in the State of Florida. The restricted license required that a fully-licensed doctor supervise **VALIDO's** activities.  **VALIDO** owned and operated Charitte Medical Center ("Charitte Medical") in Miami, Florida, and treated patients there from in or around January 2000 through in and around December 2001.

11.     Defendant **LUIS JACINTO MARTI**, a Miami-Dade County resident, is a medical doctor licensed to practice in the State of Florida. **MARTI** was employed by Charitte Medical and treated patients there from in or around January 2000 through in or around December 2001. **MARTI** was the supervising doctor for **JORGE ARNALDO VALIDO.**

12.     The "Dispensing Pharmacies" were pharmacies, located in Miami-Dade County, that filled and dispensed prescriptions for IVIG drugs that had been fraudulently obtained at the direction of **ONELIO S. BAEZ**.

13.     The "Purchasing Pharmacy" was a pharmacy located in Miami-Dade County. At the direction of **ONELIO S. BAEZ**, the Purchasing Pharmacy paid **BAEZ** for prescription drugs that **BAEZ** and his co-conspirators fraudulently obtained from the Dispensing Pharmacies and then diverted to the Purchasing Pharmacy for resale.

4

**COUNT 1**
**Conspiracy to Defraud the United States,**
**Commit Health Care Fraud, and Pay and Receive Kickbacks**
**(18 U.S.C. § 371)**

1.      Paragraphs 1 through 13 of the General Allegations section of this Indictment are reagealleged and incorporated as though fully set forth herein.

2.      From in or around January 2000, through in or around December 2001, in Miami-Dade County, in the Southern District of Florida, and elsewhere, the defendants,

**ONELIO S. BAEZ,**
**JUAN CARLOS MATEO,**
**JORGE ARNALDO VALIDO,**
**and**
**LUIS JACINTO MARTI,**

did willfully, that is, with the specific intent to further the unlawful purpose, and knowingly combine, conspire, confederate, and agree with each other, and with other persons known and unknown to the Grand Jury:

A.      to defraud the United States by impairing, obstructing, and defeating, through deceitful and dishonest means, the lawful government functions of the United States Department of Health and Human Services in its administration and oversight of Medicaid;

B.      to violate Title 42, United States Code, Section 1320a-7b(b)(1), by knowingly and willfully soliciting and receiving any remuneration, including any kickback and bribe, directly and indirectly, overtly and covertly, in return for: referring an individual for the furnishing and arranging for the furnishing of any item and service for which payment may be made in whole and in part under Medicaid, a Federal health care program, as defined by Title 42, United States Code, Section 1320a-7b(f); and purchasing and ordering, and arranging for and recommending purchasing

5

and ordering, any good, service, and item for which payment may be made in whole and in part by Medicaid;

        C.     to violate Title 42, United States Code, Section 1320a-7b(b)(2) by knowingly and willfully offering and paying any remuneration, including any kickback and bribe, directly and indirectly, overtly and covertly, to any person to induce such person: to refer an individual for the furnishing and arranging for the furnishing of any item and service for which payment may be made in whole and in part under Medicaid, a Federal health care program, as defined by Title 42, United States Code, Section 1320a-7b(f); and to purchase and order, and arrange for and recommend purchasing and ordering, any good, service, and item for which payment may be made in whole and in part under Medicaid; and

        D.     to violate Title 18, United States Code, Section 1347, by knowingly and willfully executing, and attempting to execute, a scheme and artifice to defraud Medicaid, a health care benefit program affecting commerce, as defined by Title 18, United States Code, Section 24(b), and to obtain, by means of materially false and fraudulent pretenses, representations, and promises, money and property owned by, and under the custody and control of Medicaid, in connection with the delivery of and payment for health care benefits, items, and services.

## PURPOSE OF THE CONSPIRACY

        3.     It was the purpose of the conspiracy for the defendants and their co-conspirators to unlawfully enrich themselves by: (a) paying kickbacks and bribes to patients, doctors, and others so that prescription drugs would be fraudulently obtained; (b) causing the submission of false and fraudulent claims to Medicaid for the cost of fraudulently obtained prescription drugs; (c) diverting fraudulently obtained prescription drugs and reselling them for profit outside of ordinary channels

6

of distribution; and (d) concealing the payment of kickbacks and bribes, the submission of false and fraudulent Medicaid claims, and the receipt and transfer of proceeds of the diversion and resale of prescription drugs.

## MANNER AND MEANS OF THE CONSPIRACY

The manner and means by which the defendants and their co-conspirators sought to accomplish the purpose and objects of the conspiracy included, among others, the following:

4.      **ONELIO S. BAEZ, JUAN CARLOS MATEO**, and their co-conspirators recruited and transported Medicaid recipients to medical clinics and doctors' offices to receive fraudulent IVIG prescriptions.

5.      To facilitate the fraudulent prescription drug billing and diversion scheme, **ONELIO S. BAEZ, JUAN CARLOS MATEO**, and their co-conspirators paid, and caused the payment of, kickbacks and bribes to Medicaid recipients, doctors, and others.

6.      **JORGE ARNALDO VALIDO** and **LUIS JACINTO MARTI** issued, and caused to be issued, fraudulent prescriptions for IVIG drugs for the Medicaid recipients and created, and caused the creation of, false and fraudulent documents for the patient files of these recipients.

7.      **ONELIO S. BAEZ, JUAN CARLOS MATEO**, and their co-conspirators arranged for the fraudulent prescriptions to be filled and dispensed at the Dispensing Pharmacies.

8.      **ONELIO S. BAEZ, JUAN CARLOS MATEO**, and their co-conspirators provided forged delivery tickets to the Dispensing Pharmacies in order to create the false impression that Medicaid recipients had received their prescribed drugs. **BAEZ, MATEO**, and their coconspirators did not deliver the drugs to the Medicaid recipients, but instead diverted, and caused the diversion

7

of, the drugs to the Purchasing Pharmacy, which arranged for the resale of the drugs for profit outside the ordinary channels of distribution.

9.      Conspirators caused the Dispensing Pharmacies to submit in excess of $1 million in false and fraudulent claims to Medicaid for the cost of fraudulently obtained prescription drugs.

10.     **BAEZ** directed that proceeds of diverted and resold prescription drugs be disbursed from bank accounts affiliated with the Purchasing Pharmacy in the form of cash and checks made payable to various individuals and businesses in order to conceal the disbursements.

## OVERT ACTS IN FURTHERANCE OF THE CONSPIRACY

In furtherance of the conspiracy, and to accomplish its purpose and objects, at least one of the conspirators committed, or caused to be committed, in the Southern District of Florida, and elsewhere, at least one of the following overt acts, among others:

1.      On or about May 30, 2000, **LUIS JACINTO MARTI** issued a fraudulent prescription for Gammimune in the name of Medicaid recipient # xxxx58802.

2.      On or about May 30, 2000, **LUIS JACINTO MARTI** and **ONELIO S. BAEZ** caused a Dispensing Pharmacy to submit a false and fraudulent claim to Medicaid, seeking reimbursement for the cost of Iveegam, which drug was neither medically necessary nor provided to Medicaid recipient # xxxx58802.

3.      On or about September 12, 2000, **LUIS JACINTO MARTI** and **ONELIO S. BAEZ** caused a Dispensing Pharmacy to submit a false and fraudulent claim to Medicaid, seeking reimbursement for the cost of Gammimune, which drug was neither medically necessary nor provided to Medicaid recipient # xxxx51002.

4.     On or about September 22, 2000, **LUIS JACINTO MARTI** and **ONELIO S. BAEZ** caused a Dispensing Pharmacy to submit a false and fraudulent claim to Medicaid, seeking reimbursement for the cost of Gammimune, which drug was neither medically necessary nor provided to Medicaid recipient # xxxx31697.

5.     On or about September 29, 2000, **LUIS JACINTO MARTI** and **ONELIO S. BAEZ** caused a Dispensing Pharmacy to submit a false and fraudulent claim to Medicaid, seeking reimbursement for the cost of Gammimune, which drug was neither medically necessary nor provided to Medicaid recipient # xxxx63410.

6.     On or about October 10, 2000, **LUIS JACINTO MARTI** issued a fraudulent prescription for Gammimune in the name of Medicaid recipient # xxxx37302.

7.     On or about October 11, 2000, **LUIS JACINTO MARTI** and **ONELIO S. BAEZ** caused a Dispensing Pharmacy to submit false and fraudulent claims to Medicaid, seeking reimbursement for the cost of Gammimune, which drug was neither medically necessary nor provided to Medicaid recipient # xxxx37302.

8.     On or about October 11, 2000, **LUIS JACINTO MARTI** and **ONELIO S. BAEZ** caused a Dispensing Pharmacy to submit a false and fraudulent claim to Medicaid, seeking reimbursement for the cost of Gammimune, which drug was neither medically necessary nor provided to Medicaid recipient # xxxx15116.

9.     On or about October 26, 2000, **LUIS JACINTO MARTI** issued a fraudulent prescription for Gammimune in the name of Medicaid recipient # xxxx01483.

10.     On or about October 26, 2000, **LUIS JACINTO MARTI** and **ONELIO S. BAEZ** caused a Dispensing Pharmacy to submit a false and fraudulent claim to Medicaid, seeking reimbursement for the cost of Gammimune, which drug was neither medically necessary nor provided to Medicaid recipient # xxxx01483.

11.     On or about November 9, 2000, **LUIS JACINTO MARTI** and **ONELIO S. BAEZ** caused a Dispensing Pharmacy to submit a false and fraudulent claim to Medicaid, seeking reimbursement for the cost of Gammimune, which drug was neither medically necessary nor provided to Medicaid recipient # xxxx30409.

12.     On or about November 10, 2000, **LUIS JACINTO MARTI** issued a fraudulent prescription for Gammimune in the name of Medicaid recipient # xxxx38802

13.     On or about November 10, 2000, **LUIS JACINTO MARTI** and **ONELIO S. BAEZ** caused a Dispensing Pharmacy to submit a false and fraudulent claim to Medicaid, seeking reimbursement for the cost of Gammimune, which drug was neither medically necessary nor provided to Medicaid recipient # xxxx38802.

14.     On or about November 16, 2000, **LUIS JACINTO MARTI** and **ONELIO S. BAEZ** caused a Dispensing Pharmacy to submit a false and fraudulent claim to Medicaid, seeking reimbursement for the cost of Gammimune, which drug was neither medically necessary nor provided to Medicaid recipient # xxxx34019.

15.     On or about December 6, 2000, **LUIS JACINTO MARTI** issued a fraudulent prescription for Gammimune in the name of Medicaid recipient # xxxx93368.

16.     On or about December 6, 2000, **LUIS JACINTO MARTI** and **ONELIO S. BAEZ** caused a Dispensing Pharmacy to submit a false and fraudulent claim to Medicaid, seeking reimbursement for the cost of Gammimune, which drug was neither medically necessary nor provided to Medicaid recipient # xxxx93368.

17.     On or about December 8, 2000, **LUIS JACINTO MARTI** and **ONELIO S. BAEZ** caused a Dispensing Pharmacy to submit a false and fraudulent claim to Medicaid, seeking reimbursement for the cost of Gammimune, which drug was neither medically necessary nor provided to Medicaid recipient # xxxx29884.

18.     On or about December 21, 2000, **LUIS JACINTO MARTI** and **ONELIO S. BAEZ** caused a Dispensing Pharmacy to submit a false and fraudulent claim to Medicaid, seeking reimbursement for the cost of Gammimune, which drug was neither medically necessary nor provided to Medicaid recipient # xxxx50315.

19.     On or about December 22, 2000, **LUIS JACINTO MARTI** and **ONELIO S. BAEZ** caused a Dispensing Pharmacy to submit a false and fraudulent claim to Medicaid, seeking reimbursement for the cost of Gammimune, which drug was neither medically necessary nor provided to Medicaid recipient # xxxx16624.

20.     On or about December 26, 2000, **LUIS JACINTO MARTI** issued a fraudulent prescription for Gammimune in the name of Medicaid recipient # xxxx16624.

21.     On or about December 29, 2000, **LUIS JACINTO MARTI** and **ONELIO S. BAEZ** caused a Dispensing Pharmacy to submit a false and fraudulent claim to Medicaid, seeking reimbursement for the cost of Gammimune, which drug was neither medically necessary nor provided to Medicaid recipient # xxxx29410.

22.     On or about January 12, 2001, **LUIS JACINTO MARTI** and **ONELIO S. BAEZ** caused a Dispensing Pharmacy to submit a false and fraudulent claim to Medicaid, seeking reimbursement for the cost of Gammimune, which drug was neither medically necessary nor provided to Medicaid recipient # xxxx67562.

23.     On or about February 9, 2001, **LUIS JACINTO MARTI** and **ONELIO S. BAEZ** caused a Dispensing Pharmacy to submit a false and fraudulent claim to Medicaid, seeking reimbursement for the cost of Gammimune, which drug was neither medically necessary nor provided to Medicaid recipient # xxxx62023.

24.     On or about February 16, 2001, **LUIS JACINTO MARTI** and **ONELIO S. BAEZ** caused a Dispensing Pharmacy to submit a false and fraudulent claim to Medicaid, seeking reimbursement for the cost of Gammimune, which drug was neither medically necessary nor provided to Medicaid recipient # xxxx19753.

25.     On or about May 4, 2001, **LUIS JACINTO MARTI** and **ONELIO S. BAEZ** caused a Dispensing Pharmacy to submit a false and fraudulent claim to Medicaid, seeking reimbursement for the cost of Venoglobulin, which drug was neither medically necessary nor provided to Medicaid recipient xxxx40432.

All in violation of Title 18, United States Code, Section 371.

### COUNTS 2-16
### Health Care Fraud
### (18 U.S.C. §§ 1347 and 2)

1.     Paragraphs 1 through 13 of the General Allegations section of this Indictment are realleged and incorporated as though fully set forth herein.

12

2.      From in or around January 2000, and continuing through in or around December 2001, in Miami-Dade County, in the Southern District of Florida, and elsewhere, the defendants,

**ONELIO S. BAEZ,**
**JUAN CARLOS MATEO,**
**JORGE ARNALDO VALIDO,**
**and**
**LUIS JACINTO MARTI,**

in connection with the delivery and payment for health care benefits, items, and services, did knowingly and willfully execute, and attempt to execute, a scheme and artifice to defraud Medicaid, a health care benefit program affecting commerce, as defined by Title 18, United States Code, Section 24(b), and to obtain, by means of materially false and fraudulent pretenses, representations, and promises, money and property owned by, and under the custody and control of Medicaid, that is: the defendants caused the submission of false and fraudulent claims to Medicaid for the cost of various prescription medications, including IVIG drugs, that were not medically necessary and were not delivered to the Medicaid recipients in whose names the prescriptions were written.

## PURPOSE OF THE SCHEME AND ARTIFICE

3.      It was the purpose of the scheme and artifice for the defendants and their co-schemers and accomplices to unlawfully enrich themselves by: (a) paying kickbacks and bribes to patients, doctors, and others so that prescription drugs would be fraudulently obtained; (b) causing the submission of false and fraudulent claims to Medicaid for the cost of fraudulently obtained prescription drugs; (c) diverting fraudulently obtained prescription drugs and reselling them for profit outside of ordinary channels of distribution; and (d) concealing the payment of kickbacks and bribes, the submission of false and fraudulent Medicaid claims, and the receipt and transfer of proceeds of the diversion and resale of prescription drugs.

13

## MANNER AND MEANS OF THE SCHEME AND ARTIFICE

4.      Paragraphs 4 through 10 of the manner and means section of Count 1 of this Indictment are realleged and incorporated by reference as though fully set forth herein.

## EXECUTIONS OF THE SCHEME AND ARTIFICE

On or about the dates specified as to each count below, in the Southern District of Florida, and elsewhere, the defendants, in connection with the delivery and payment for health care benefits, items, and services, did knowingly and willfully execute, and attempt to execute, the above-described scheme and artifice to defraud a health care benefit program affecting commerce, that is, Medicaid, and to obtain, by means of materially false and fraudulent pretenses, representations, and promises, money and property owned by, and under the custody and control of said health care benefit program:

| Count | Medicaid Recipient Identification Number | Date of Claim | Prescription Drug | Claim Number | Approx. Amount Paid by Medicaid |
|-------|---------------------|---------------|-------------------|--------------|------------------------------|
| 2  | xxxx34019 | 11/16/00 | Gammimune | 60032199035041301 | $2,724.23 |
| 3  | xxxx93368 | 12/06/00 | Gammimune | 60034199042055401 | $2,724.23 |
| 4  | xxxx29884 | 12/08/00 | Gammimune | 60034399050063801 | $2,724.23 |
| 5  | xxxx50315 | 12/21/00 | Gammimune | 60035699036013201 | $2,724.23 |
| 6  | xxxx16624 | 12/22/00 | Gammimune | 60035799063085801 | $2,724.23 |
| 7  | xxxx01483 | 12/22/00 | Gammimune | 60035799064036001 | $2,044.23 |
| 8  | xxxx29410 | 12/29/00 | Gammimune | 60036499054026001 | $2,044.23 |
| 9  | xxxx67562 | 01/12/01 | Gammimune | 60101299059024801 | $2,724.23 |
| 10 | xxxx62023 | 02/09/01 | Gammimune | 60104099055053501 | $2,044.23 |

| Count | Medicaid Recipient Identification Number | Date of Claim | Prescription Drug | Claim Number | Approx. Amount Paid by Medicaid |
|---|---|---|---|---|---|
| 11 | xxxx19753 | 02/16/01 | Gammimune | 60104799052052801 | $2,044.23 |
| 12 | xxxx30409 | 2/16/01 | Gammimune | 60104799051089601 | $2,044.23 |
| 13 | xxxx18797 | 2/16/01 | Gammimune | 60104799054023401 | $2,724.23 |
| 14 | xxxx81253 | 2/16/01 | Gammimune | 60104799051045601 | $2,724.23 |
| 15 | xxxx38802 | 2/16/01 | Gammimune | 60104799048034701 | $2,044.23 |
| 16 | xxxx40432 | 05/04/01 | Venoglobulin | 60112499059035601 | $2,344.23 |

All in violation of Title 18, United States Code, Sections 1347 and 2.

A TRUE BILL

FOREPERSON

R. ALEXANDER ACOSTA
UNITED STATES ATTORNEY

STEPHEN A. LeCLAIR
SPECIAL ASSISTANT U.S. ATTORNEY

LOUIS V. MARTINEZ
SPECIAL ASSISTANT U.S. ATTORNEY

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA

**05-20849 CR-MARTINEZ**

UNITED STATES OF AMERICA

CASE NO. _____

vs.

MAGISTRATE JUDGE
BANDSTRA

ONELIO S. BAEZ, et al.,

**CERTIFICATE OF TRIAL ATTORNEY***

_____/
                    Defendants.

**Superseding Case Information:**

**Court Division:** (Select One)

New Defendant(s)          Yes _____  No _____
Number of New Defendants       _____
Total number of counts         _____

X   Miami _____ Key West _____
____ FTL _____ WPB _____ FTP

I do hereby certify that:

1.  I have carefully considered the allegations of the indictment, the number of defendants, the number of probable witnesses and the legal complexities of the Indictment/Information attached hereto.

2.  I am aware that the information supplied on this statement will be relied upon by the Judges of this Court in setting their calendars and scheduling criminal trials under the mandate of the Speedy Trial Act, Title 28 U.S.C. Section 3161.

3.  Interpreter:      (Yes or No)      Yes
    List language and/or dialect      Spanish

    MAG. SEC.

    NOV 10 2005

    CLARENCE MADDOX
    CLERK U.S. DIST. CT.
    S.D. OF FLA. · MIAMI

4.  This case will take      10      days for the parties to try.

5.  Please check appropriate category and type of offense listed below:
    (Check only one)                              (Check only one)

| | | | | | |
|---|---|---|---|---|---|
| I | 0 to 5 days | _____ | Petty | | _____ |
| II | 6 to 10 days | 10 | Minor | | _____ |
| III | 11 to 20 days | _____ | Misdem. | | _____ |
| IV | 21 to 60 days | _____ | Felony | | X |
| V | 61 days and over | _____ | | | |

6.  Has this case been previously filed in this District Court? (Yes or No)      No

If yes:
Judge: _____      Case No. _____
(Attach copy of dispositive order)
Has a complaint been filed in this matter?      (Yes or No)      No
If yes:
Magistrate Case No. _____
Related Miscellaneous numbers:      No. 04-20701-Cr-Highsmith
Defendant(s) in federal custody as of _____
Defendant(s) in state custody as of _____
Rule 20 from the _____      District of _____

Is this a potential death penalty case? (Yes or No)      No

7.  Does this case originate from a matter pending in the U.S. Attorney's Office prior to April 1, 2003?      _____ Yes      X   No

8.  Does this case originate from a matter pending in the U. S. Attorney's Office prior to April 1, 1999?      _____ Yes      X   No
    If yes, was it pending in the Central Region?      _____ Yes      _____ No

9.  Does this case originate from a matter pending in the Northern Region of the U.S. Attorney's Office prior to October 14, 2003?      _____ Yes      X   No

10. Does this case originate from a matter pending in the Narcotics Section (Miami) prior to May 18, 2003?      _____ Yes      X   No

_____ for
STEPHEN A. LECLAIR
SPECIAL ASSISTANT UNITED STATES ATTORNEY
Florida Bar No. 0219657

*Penalty Sheet(s) attached

REV.1/14/04

# UNITED STATES DISTRICT COURT
# SOUTHERN DISTRICT OF FLORIDA

PENALTY SHEET

Defendant's Name:  Onelio S. Baez

Case No. 05 - 20849 CR-MARTINEZ <span>MAGISTRATE JUDGE BANDSTRA</span>

Count  #: 1

Conspiracy to Defraud the United States, Commit Health Care Fraud, and Pay and Receive Health Care Kickbacks

18 U.S.C. § 371

\* Max.Penalty:    5 years' imprisonment

Counts  #: 2-16

Health Care Fraud

FILED by _____ D.C.
MAG. SEC.

NOV 1 0 2005

CLARENCE MADDOX
CLERK U.S. DIST. CT.
S.D. OF FLA. · MIAMI

18 U.S.C. §§ 1347 and 2

\*Max. Penalty:    10 years' imprisonment as to each count

Count  #:

\*Max. Penalty:

Count  #:

\*Max. Penalty:

**\*Refers only to possible term of incarceration, does not include possible fines, restitution, special assessments, parole terms, or forfeitures that may be applicable.**

## UNITED STATES DISTRICT COURT
## SOUTHERN DISTRICT OF FLORIDA

### PENALTY SHEET

Defendant's Name: _Juan Carlos Mateo_

Case No. 05 - 20849 CR-MARTINEZ

Count #: 1

    Conspiracy to Defraud the United States, Commit Health Care Fraud, and Pay and Receive Health Care Kickbacks

    18 U.S.C. § 371

* Max. Penalty: 5 years' imprisonment

Counts #: 2-16

    Health Care Fraud

    18 U.S.C. § §1347 and 2

*Max. Penalty: 10 years' imprisonment as to each count

FILED by _____ D.C.

NOV 10 2005

CLARENCE MADDOX
CLERK U.S. DIST. CT.
S.D. OF FLA. - MIAMI

Count #:

*Max. Penalty:

Count #:

*Max. Penalty:

**\*Refers only to possible term of incarceration, does not include possible fines, restitution, special assessments, parole terms, or forfeitures that may be applicable.**

# UNITED STATES DISTRICT COURT
## SOUTHERN DISTRICT OF FLORIDA

PENALTY SHEET

**Defendant's Name:**  Jorge Arnaldo Valido

**Case No:**  05 - 20849 CR-MARTINEZ    WANDSTRA

Count #: 1

Conspiracy to Defraud the United States, Commit Health Care Fraud, and Pay and Receive Health Care Kickbacks

18 U.S.C. § 371

**\* Max.Penalty:**    5 years' imprisonment

FILED by _____ D.C.
MAG. SEC.
NOV 1 0 2005
CLARENCE MADDOX
CLERK U.S. DIST. CT.
S.D. OF FLA. · MIAMI

Counts #: 2-16

Health Care Fraud

18 U.S.C. §§ 1347 and 2

**\*Max. Penalty:**    10 years' imprisonment as to each count

Count #:

**\*Max. Penalty:**

Count #:

**\*Max. Penalty:**

**\*Refers only to possible term of incarceration, does not include possible fines, restitution, special assessments, parole terms, or forfeitures that may be applicable.**

# UNITED STATES DISTRICT COURT
# SOUTHERN DISTRICT OF FLORIDA

## PENALTY SHEET

Defendant's Name:  Luis Jacinto Marti

Case No: 05 - 20849 CR-MARTINEZ, MAGISTRATE JUDGE
BANDSTRA

Count #: 1

Conspiracy to Defraud the United States, Commit Health Care Fraud, and Pay and Receive Health Care Kickbacks

18 U.S.C. § 371

\* Max.Penalty:    5 years' imprisonment

Counts #: 2-16

Health Care Fraud

18 U.S.C. §§ 1347 and 2

FILED by _____ D.C.
MAG. SEC.

NOV 1 0 2005

CLARENCE MADDOX
CLERK U.S. DIST. CT.
S.D. OF FLA. - MIAMI

\*Max. Penalty:    10 years' imprisonment as to each count

Count #:

\*Max. Penalty:

Count #:

\*Max. Penalty:

**\*Refers only to possible term of incarceration, does not include possible fines, restitution, special assessments, parole terms, or forfeitures that may be applicable.**

Grand Jury

Indictment No. 04-805-EC5-004

FORM DBD-34
March 04

No. 05 - 20849 CR-MARTINEZ

UNITED STATES DISTRICT COURT

SOUTHERN District of FLORIDA

THE UNITED STATES OF AMERICA

vs.

ONELIO BAEZ, et al.,

Defendants.

**INDICTMENT**

18 U.S.C. § 371
18 U.S.C. § 1347
18 U.S.C. § 2

A true bill.

Foreman

FGJ 04-805 (MIA)

Filed in open court this _____ 10th _____ day,

of _____ November _____ A.D. 2005

Clerk

Bail, $ _____